**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

TONY'S PANTRY MART INC. #1,  )
                                       )
          Plaintiff,  )
                                       )
                                     )     Case No. 15 C 2967
        v.  )
                                       )
UNITED STATES OF AMERICA  )
DEPARTMENT OF AGRICULTURE  )
FOOD and NUTRITION SERVICE,  )
                                       )
          Defendant.  )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On April 3, 2015, Plaintiff Tony's Pantry Mart Inc. #1 ("Tony's Pantry") filed a Complaint and Petition for Review of the Food and Nutrition Service's ("FNS") Final Agency Decision permanently disqualifying Tony's Pantry from participating in the Supplemental Nutrition Assistance Program ("SNAP").[1]  *See* 7 U.S.C. §§ 2021(b)(3)(B), 2023(a)(13).  Before the Court is Plaintiff's November 18, 2015 motion to stay the FNS's Final Agency Decision pending the outcome of this matter pursuant to 7 U.S.C. § 2023(a)(17).  On March 1 and 17, 2016, the Court conducted an evidentiary hearing on Plaintiff's motion to stay.  After carefully considering the evidence and the parties' arguments, the Court denies Plaintiff's motion.

## LEGAL BACKGROUND

"In 1964, Congress permanently established what was then called the Food Stamp Program" that "aims both to feed low-income individuals and to strengthen the nation's

---

[1]  The United States Department of Agriculture ("USDA") has delegated the administration of SNAP to the Food and Nutrition Service ("FNS").  *See Dinner Bell Mkts., Inc. v. United States,* 116 F. Supp. 3d 905, 907 (S.D. Ind. 2015); 7 C.F.R. § 271.3(a).

agricultural economy." *Fells v. United States,* 627 F.3d 1250, 1252 (7th Cir. 2010) (internal citation and citations omitted); *see also* 7 U.S.C. § 2011. "In 1996, Congress set a deadline for states to replace the [original paper] coupons with electronic benefit transfer ('EBT') systems, which use debit-type cards to deduct benefits from a central location." *Fells*, 627 F.3d at 1252 (citing 7 U.S.C. § 2016(h)); *see also Brothers Food & Liquor, Inc. v. United States,* 626 F. Supp. 2d 875, 877 (N.D. Ill. 2009) ("Food stamp benefits are delivered to recipients on encoded Electronic Benefits Transaction (EBT) cards which recipients swipe through a reader in order to pay for eligible items, such as bread, dairy products, meat, and vegetables."). "Upon the completion of this change in 2008, Congress renamed the program the Supplemental Nutrition Assistance Program" or SNAP. *Fells*, 627 F.3d at 1252; *see also Mehrab No. 1 Corp. v. United States,* 837 F. Supp. 2d 943, 944 (N.D. Ill. 2011) (SNAP was "formerly known as the Food Stamp Program"). Individuals may only redeem SNAP benefits for eligible food items at retail stores that are approved for program participation. *See* 7 U.S.C. § 2013(a). "Just as individuals must satisfy certain eligibility requirements in order to participate in SNAP, retail food store owners also must comply with applicable provisions and regulations." *Fells*, 627 F.3d at 1252 (citing 7 U.S.C. § 2018). The FNS may disqualify participating stores for the improper use of benefits, including "trafficking," which is defined as "the buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits ... for cash or consideration other than eligible food." *Dinner Bell Mkts., Inc. v. United States,* 116 F. Supp. 3d 905, 907 (S.D. Ind. 2015) (quoting 7 C.F.R. § 271.2).

## FACTUAL BACKGROUND

According to the administrative record in this matter, Tony's Pantry is a convenience store owned by Mohammad Yahya. (Ex. A, EBT Case Analysis, A.R. 47.) Tony's Pantry, an authorized SNAP retailer since April 2012, is located at 745 S. Kedzie Avenue in Chicago, Illinois. (*Id.*) After detecting unusual SNAP transaction activity at Tony's Pantry, the FNS, via a store visit contractor, conducted an in-person visit of the store on November 30, 2013. (A.R. 47-60.) The resulting EBT case analysis related to the November 2013 store visit stated that the store's eligible food inventory consisted of a mixture of staple and snack foods, but that the volume of snack foods was much greater than staple foods. (A.R. 48-49.) The analysis also stated that the store did not carry fresh meats, fish, or poultry and had minimal selections of fresh fruits and vegetables. (*Id.*) Moreover, the store did not advertise specials or offer items in bulk, had only one cash register, and the store's shopping cart and basket were in the storeroom at the time of the visit. (*Id.*) In addition to the store visit, the FNS monitored Tony Pantry's SNAP-EBT transactions from October 2013 through March 2014. (A.R. 47-48, 51-60.)

On September 2, 2014, the FNS sent Tony's Pantry a charge letter based on its analysis of the store's SNAP-EBT transactions that showed patterns indicative of trafficking. (Ex. B, 9/2/14 Charge Letter, A.R. 61-63.) Specifically, the charge letter notified Tony's Pantry that: (1) a series of SNAP-EBT transactions revealed an unusual number of transactions ending in the same cents value; (2) a series of SNAP-EBT transactions revealed multiple transactions made by individual benefit accounts in unusually short time-frames; and (3) a series of SNAP-EBT transactions showed excessively large purchase transactions made from recipient accounts. (A.R. 61-63.) The charge letter attached the lists of the transactions upon which the FNS relied

in making its determination.  (A.R. 64-103.)  Further, the charge letter advised Tony's Pantry that it could request the imposition of a civil money penalty in lieu of the sanction of permanent disqualification, but to do so, Tony's Pantry had to satisfy the four criteria set forth in 7 C.F.R. § 278.6(i).  (A.R. 61-62.)

On September 11, 2014, Tony's Pantry, by counsel, filed a response to the September 2, 2014 charge letter.  (Ex. C, 9/11/14, Response Letter, A.R. 105-08.)  In the response, Tony's Pantry did not request the imposition of a civil penalty under 7 C.F.R. § 278.6(i) in lieu of permanent disqualification.  (*Id*.)  In addition, although the response asserted that the store had not engaged in any trafficking, counsel failed to attach any supporting documentation – such as receipts, invoices, or affidavits – supporting its argument that the transactions identified in the charge letter were legitimate SNAP purchases.  (*Id*.)  Thereafter, the FNS considered the response and lack of documentation, along with the SNAP-EBT transactions outlined in the charge letter, and concluded that the sanction of permanent disqualification was appropriate under the circumstances.  (Ex. E, 10/1/14 Case Sanction Rec. A.R. 119-27.)

On October 2, 2014, the FNS issued a final determination letter to Tony's Pantry permanently disqualifying the store from SNAP.  (Ex. F, 10/02/14, Final Determination Letter, A.R. 128-29.)  The final determination letter specifically notified Tony's Pantry that the permanent disqualification was effective upon receipt of the letter and that the determination was final unless the store submitted a written request for administrative review of the decision within ten days.  (A.R. 128.)  On October 10, 2014, Tony's Pantry requested administrative review of the final determination letter with the USDA's Administrative Review Branch.  (Ex. G, 10/10/14 Letter, A.R. 131-32.)  To that end, counsel for Tony's Pantry provided documents to justify the

irregular transactions identified in the charge letter.  (Ex. I, 10/23/14 Letter, A.R. 146-293.)

On March 10, 2015, an administrative review officer issued the Final Agency Decision upholding the FNS's finding of trafficking and the penalty of permanent disqualification.  (Ex. K, Final Agency Decision, A.R. 312-28.)  Based on the factual record, including the SNAP-EBT benefit transaction data, the Final Agency Decision concluded that there were three patterns of EBT transaction characteristics that indicated trafficking, including:  (1) an unusual number of transactions ending in the same cents value; (2) multiple transactions from individual household accounts in short time-frames; and (3) excessively large SNAP transactions.  (A.R. 322-26.)  The Final Agency Decision also noted that Tony's Pantry did not offer sufficient evidence or reasonable explanations for these unusual, irregular, and inexplicable transactions.  (*Id.*) Pursuant to the Final Agency Decision, the FNS permanently disqualifying Tony's Pantry from participating in SNAP.  *See* 7 U.S.C. §§ 2021(b)(3)(B), 2023(a)(13).

On April 3, 2015, Tony's Pantry filed this lawsuit seeking judicial review of the March 10, 2015 Final Agency Decision.  Over seven months later, on November 18, 2015, Tony's Pantry filed the present motion to stay the FNS's Final Agency Decision pending the outcome of this matter pursuant to 7 U.S.C. § 2023(a)(17).

On March 1, 2016, the Court held an evidentiary hearing regarding the store's motion to stay, at which time Jeffrey Sparman, a FNS program specialist, testified.  The Court continued the evidentiary hearing on March 17, 2016 and Mr. Sparman concluded his testimony.  At the hearing, Mr. Sparman testified about the SNAP program in general; how the EBT cards function; the FNS's systems, including ALERT ("Anti-Fraud Locator using EBT Retailer Transactions") and STARS ("Store Tracking and Redemption System"), that monitor EBT transactions to target

suspicious SNAP activity; contractor store visits and reports; the procedures involved in compiling an EBT Case Report; and how the agency generates charge letters, case sanction recommendations, and determination letters. In addition, he testified about the November 30, 2013 store visit of Tony's Pantry; the specific transaction scans in the store's EBT Case Analysis, including the same cents ending transactions, high dollar transactions, and household shopping patterns; and why he recommended the sanction of permanent disqualification. Mr. Sparman further explained the FNS's administrative review process.

Also at the March 17, 2016 evidentiary hearing, Tony's Pantry called the following witnesses in support of the store's motion to stay: (1) Abdalrahim Asfor, an employee of Tony's Pantry; (2) Mohammad Yahya, the owner of Tony's Pantry; and (3) Fadi Khasib, an employee of Tony's Pantry. In general, these witnesses testified about the food and non-food items that Tony's Pantry sells; the store's neighborhood and customer base; and the store's layout, including the location of the shopping baskets and cart. Plaintiff's witnesses also testified about the reasons why there were (1) an unusual number of transactions ending in the same cents value; (2) multiple transactions from individual household accounts in short time-frames; and (3) excessively large SNAP transactions. In particular, they testified about sales items that resulted in the same cents values because they did not charge sales tax on SNAP purchases; how individuals from the same household often shop more than once at Tony's Pantry on any given day; and expensive food items that the store sells, such as baby formula, Italian beef, and frozen foods like pizza, in order to justify large SNAP transactions.

**ANALYSIS**

I.      **Chevron Analysis**

In the present motion, Tony's Pantry asserts that 7 U.S.C. § 2023(a)(17) provides the proper vehicle to stay the proceedings pending the Court's judicial review of the FNS's Final Agency Decision.  Section 2023(a)(17) states in its entirety:

> During the pendency of such judicial review, or any appeal therefrom, the administrative action under review shall be and remain in full force and effect, unless on application to the court on not less than ten days' notice, and after hearing thereon and a consideration by the court of the applicant's likelihood of prevailing on the merits and of irreparable injury, the court temporarily stays such administrative action pending disposition of such trial or appeal.

In response to Plaintiff's motion to stay, Defendant argues that Tony's Pantry is not entitled to seek a stay pending the outcome of this matter because the provision immediately following 7 U.S.C. § 2023(a)(17) prohibits the granting of a stay in cases involving the sanction of permanent disqualification.  Specifically, § 2023(a)(18) states in its entirety:

> Notwithstanding any other provision of this subsection, any permanent disqualification of a retail food store or wholesale food concern under paragraph (3) or (4) of section 2021(b) of this title shall be effective from the date of receipt of the notice of disqualification.  If the disqualification is reversed through administrative or judicial review, the Secretary shall not be liable for the value of any sales lost during the disqualification period.

The USDA has interpreted § 2023(a)(18) in 7 C.F.R. § 279.7(d), which states in relevant part:

> During the pendency of any judicial review, or any appeal therefrom, the administrative action under review shall remain in force unless the firm makes a timely application to the court and after hearing thereon, the court stays the administrative action after a showing that irreparable injury will occur absent a stay and that the firm is likely to prevail on the merits of the case.  *However, permanent disqualification actions taken in accordance with § 278.6(e)(1) of this chapter shall not be subject to such a stay of administrative action.*

7 C.F.R. § 279.7(d) (emphasis added).

The parties maintain that to resolve their competing interpretations of the statutory scheme, the Court must consider the statute as a whole and review the USDA's interpretation of the statute under the framework set forth in *Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See Utility Air Regulatory Grp. v. E.P.A.,* ___ U.S. ___, 134 S. Ct. 2427, 2441, 189 L.Ed.2d 372 (2014) (it is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme") (citations and quotation marks omitted); *Emergency Servs. Billing Corp. v. Allstate Ins. Co.*, 668 F.3d 459, 465 (7th Cir. 2012) ("When interpreting any statute, we begin with the statutory language itself and assume that the plain meaning, if easily ascertained, adequately expresses the intent of the legislature."). Under the dictates of *Chevron*, when a federal court reviews an agency's construction of a statute that the agency administers, the court first looks to "whether Congress has directly spoken to the precise question at issue" and "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43; *see also Indiana v. E.P.A.,* 796 F.3d 803, 811 (7th Cir. 2015). On the other hand, if "'the statute is silent or ambiguous with respect to the specific issue,' a reviewing court must defer to the agency's interpretation if it is reasonable." *Indiana,* 796 F.3d at 811 (quoting *Chevron*, 467 U.S. at 843-44).

Under the *Chevron* framework, Defendant argues that § 2023(a)(18) is ambiguous, and thus the Court must turn to the USDA's interpretation in 7 C.F.R. § 279.7(d), which prohibits stays in permanent disqualification actions involving trafficking. As Defendant acknowledges, however, the federal district courts that have considered this question have construed the

statutory scheme under *Chevron* in various ways. *See, e.g., Dinner Bell Mkts.*, 116 F. Supp. 3d at 913 (S.D. Ind. 2015) (statute unambiguous); *Skyson USA, LLC v. United States,* 651 F. Supp. 2d 1202, 1208 (D. Haw. 2009) (statute ambiguous and agency's interpretation reasonable); *Lazaro v. United States Dept. of Agric.*, 186 F. Supp. 2d 1203, 1211 (M.D. Fla. 2001) (statute unambiguous, so reasonableness of agency's interpretation not at issue); *Ilaian v. United States Dept. of Agric.,* 87 F.Supp.2d 1047, 1047 (S.D. Cal. 2000) ("plain language of 7 U.S.C. § 2023(a)(18) reflects that a stay is not available in cases of permanent disqualification for trafficking"); *see also Ameira Corp. v. Veneman,* 169 F. Supp. 2d 432, 437 (M.D.N.C. 2001) (without discussing *Chevron*, concluded courts cannot stay administrative action during judicial review in trafficking cases); *Ahmed v. United States,* 47 F. Supp. 2d 389, 393 (W.D.N.Y. 1999) (without discussing *Chevron*, granted stay under § 2023(a)(17)). In addition, one district court questioned whether the *Chevron* framework was an appropriate consideration in the first instance because "the statute at issue does not appear to be a delegation of power to the USDA but instead is directed to the statutory grant of authority to the court." *Alkabsh v. United States,* 733 F. Supp. 2d 929, 934 (W.D. Tenn. 2010). After reviewing these cases and the parties' arguments, the Court concludes that the Southern District of Indiana's decision in *Dinner Bell Markets* and the Middle District of Florida's decision in *Lazaro* contain the most persuasive reasoning due to the district courts' thorough, detailed, and thoughtful analysis of the statutory scheme under the *Chevron* framework, as discussed below.

Turning to the *Chevron* analysis, the Court must first consider "whether Congress has directly spoken to the precise question at issue," *see id.* at 842, namely, whether federal courts may issue stays pending judicial de novo review of a permanent disqualification. Under §

2023(a), Congress granted federal courts judicial review of final USDA administrative determinations. *See Fells,* 627 F.3d at 1253; 7 U.S.C. § 2023(a)(13), (a)(15). Because § 2023(a) "does not provide for an evidentiary hearing at the administrative level, it gives each participant a right to trial 'de novo,'" but that "trial is the one and only hearing a participant in the program receives." *McGlory v. United States,* 763 F.2d 309, 311-12 (7th Cir. 1985) (per curiam) (internal citations omitted). Under the USDA's broad grant of judicial review, federal courts may temporarily stay the USDA's final determination after considering a store's likelihood of prevailing on the merits and whether the store would suffer irreparable injury. *See Ibrahim v. United States,* 834 F.2d 52, 54 (2nd Cir. 1987) (statute's de novo review provision broad in scope); *Lazaro,* 186 F.Supp.2d at 1210 (same); *see also* 7 U.S.C. § 2023(a)(17). Looking to the plain language of § 2023(a)(17), it does not limit the circumstances under which a store may seek a stay. *See Dinner Bell Mkts.,* 116 F. Supp. 3d at 913. Moreover, despite Defendant's argument to the contrary, the plain language of § 2023(a)(18) does not contravene Congress's grant under § 2023(a)(17) when it states: "Notwithstanding any other provision of this subsection, any permanent disqualification of a retail food store or wholesale food concern under paragraph (3) or (4) of section 2021(b) of this title shall be effective from the date of receipt of the notice of disqualification." Instead, § 2023(a)(18) sets the effective date of permanent disqualification as the date of the receipt of notice of disqualification. *See Dinner Bell Mkts.,* 116 F. Supp. 3d at 913; *Lazaro,* 186 F.Supp.2d at 1210. Considering the preamble in § 2023(a)(18) – "Notwithstanding any other provision of this subsection" – in the context of the statutory scheme as a whole, it refers to the exception in § 2023(a)(5), which provides for a later effective date for stores disqualified for reasons other than trafficking. *See Dinner Bell Mkts.,*

116 F. Supp. 3d at 913; *Lazaro*, 186 F.Supp.2d at 1210.  Finally, § 2023(a)(18) does not contain any language that limits the federal courts' authority to grant a stay under § 2023(a)(17).  *See Lazaro*, 186 F.Supp.2d at 1210 ("Nowhere does § 2023(a)(18) suggest, state, or imply that Congress intended to remove altogether the Court's authority to grant injunctive relief in appropriate circumstances, even for accused traffickers, under the structure set forth in § 2023(a)(17).");  *see also Dinner Bell Mkts.,* 116 F. Supp. 3d at 913.

Accordingly, this statutory scheme is not ambiguous, and thus the Court need not determine whether the USDA's interpretation in 7 C.F.R. § 279.7(d) is reasonable.  *See Lazaro,* 186 F.Supp.2d at 1211.  Because the statute does not restrict the Court's ability to stay the proceedings pending the final review of the FNS's determination, the Court turns to the requirements under § 2023(a)(17).

## II.     Success on the Merits

As to the likelihood of success on the merits, Tony's Pantry ultimately bears the burden of proving by a preponderance of the evidence that the FNS's final determination is invalid.  *See Fells,* 627 F.3d at 1253.  In its opening brief, instead of challenging the FNS's decision that the underlying transactions constituted trafficking of SNAP benefits, Tony's Pantry argues that there is a likelihood of success on the merits because the current statutory framework violates procedural due process protections.  "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of Due Process of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).  In evaluating procedural due process claims, courts engage in a two-step analysis:  (1) whether the plaintiff was deprived of a protected liberty

or property interest and (2) what type of process was due.  *See Hinkle v. White,* 793 F.3d 764, 767 (7th Cir. 2015).

### A.  The Statutory Scheme Provides Sufficient Due Process

The parties do not dispute that Tony's Pantry has a protected property interest in participating in the SNAP program.  *See McGlory,* 763 F.2d at 312; *see also Kim v. United States,* 121 F.3d 1269, 1274 (9th Cir. 1997); *TRM Inc. v. United States,* 52 F.3d 941, 944-45 (11th Cir. 1995).  Therefore, the Court must consider what process is due under the circumstances.  "While the requirements of due process vary with the particulars of the proceeding, it is well-established that the essential requirements of due process are notice and an opportunity to be heard."  *Tom Beu Xiong v. Fischer,* 787 F.3d 389, 400 (7th Cir. 2015).  "The amount and timing of the process due when a deprivation of liberty or property (in the constitutional sense of these terms) is alleged varies with circumstances."  *Chicago United Indus., Ltd. v. City of Chicago,* 445 F.3d 940, 944 (7th Cir. 2006).  As discussed above, the relevant statutory framework does not provide for an evidentiary hearing prior to the FNS's Final Agency Decision.  *See McGlory,* 763 F.2d at 311-12.  Under this framework, and because it is well-settled that a federal court's de novo judicial review of the FNS's administrative decision satisfies procedural due process, *see id.* at 312, Tony's Pantry argues that it was denied due process because the USDA permanently disqualified the store from participating in the SNAP program without a hearing prior to this juncture.

In considering what process is due in administrative proceedings, the United States Supreme Court has set forth three relevant factors for courts to balance:  "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of

12

such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews,* 424 U.S. at 335; *see also Mann v. Vogel,* 707 F.3d 872, 879 (7th Cir. 2013). In this context, the *Mathews* Court held that "something less than an evidentiary hearing is sufficient prior to adverse administrative action." *Id.* at 343 (internal quotation marks omitted).

Applying the *Mathews* test, a district court in the Northern District of New York concluded that the plaintiff retail store had been accorded sufficient due process as follows:

> Here, the private interest—continued participation in the food stamp program—is strong; however, as noted above, retailers are only incidental beneficiaries under the statutory scheme. Their interest, therefore, must be placed in perspective and considered in light of the third factor—the government's interest in administering the program for the primary beneficiaries. As the legislative history of the Food Security Act of 1985 indicates, Congress hoped to reduce food stamp abuse by rapidly implementing disqualification decisions. Finally, the risk of erroneous deprivation is slight because, at the administrative level plaintiff receives notice of the charges, an opportunity to respond in writing or in person, and an opportunity to appeal to a review officer. Furthermore, at the judicial level, plaintiff is entitled to a hearing at which to demonstrate a likelihood of prevailing on the merits.

*Ibrahim v. United States Dept. of Agric.,* 650 F. Supp. 163, 167 (N.D.N.Y.) *aff'd,* 834 F.2d 52 (2d Cir. 1987). Relying on the *Ibrahim* decision, a court in the Eastern District of California concluded that there was "no constitutional deficiency in the administrative and judicial process." *See Mansour v. United States,* No. CV 08-1313, 2009 WL 3763778, at *14 (E.D. Cal. Nov. 9, 2009); *see also Ameira Corp. v. Veneman,* 169 F. Supp. 2d 432, 440 (M.D.N.C. 2001) ("Given the losses suffered each year due to food stamp fraud, the opportunity for continued violations and further loss to the government provided by a stay of permanent disqualification

13

supports the conclusion that the procedures provided prior to the effective date of the sanction satisfy due process."); *Food City, Inc. v. Rominger,* 917 F. Supp. 364, 367 (M.D.N.C. 1995) ("like in *Ibrahim,* while Food City's interest of continuing in the food stamp program is strong, the government's interest in reducing food stamp abuse through rapid implementation of disqualification decisions is stronger.").

Indeed, in examining the *Mathews* factors, although a retail store has a private interest in continued participation in the SNAP program, retailers are only incidental beneficiaries under the statutory scheme. *See Ameira Corp,* 169 F. Supp. 2d at 440; *Ibrahim,* 650 F. Supp. at 167. With this in mind, there are strong governmental interests in reducing food stamp abuse and in administering the program for the primary beneficiaries, namely, the SNAP recipients. *See Food City,* 917 F. Supp. at 367; *Ameira Corp,* 169 F. Supp. 2d at 440; *see also United States v. Marvin,* 687 F.2d 1221, 1227 (8th Cir. 1982) ("penalty provisions in the Food Stamp Act were added to reduce fraud and abuse in the food-stamp program."). The government also has an interest in the financial and administrative burdens associated with having an administrative hearing prior to the federal court's de novo review. *See Ameira,* 169 F.Supp.2d at 440. Further, "the risk of erroneous deprivation" is minimal because "FNS regulations provide for multiple levels of informal agency review of alleged trafficking violations." *Bon Supermarket & Deli v. United States,* 87 F. Supp. 2d 593, 603 (E.D. Va. 2000); *see also Turnage v. United States,* 639 F. Supp. 228, 234 (E.D.N.C. 1986) ("The court finds that the procedures employed at the administrative level gave the plaintiff this meaningful opportunity to present his case."). After balancing the *Mathews* factors, and in light of these persuasive decisions, the statutory scheme – which involves an interactive administrative process – provides retail stores sufficient due

14

process before permanently disqualifying the stores from the SNAP program, especially in light of the strong governmental issues at stake. *See Mathews,* 424 U.S. at 343 ("something less than an evidentiary hearing is sufficient prior to adverse administrative action.").

Nevertheless, Tony's Pantry relies on a decision from the District of Arizona for the proposition that Defendant failed to afford it sufficient due process before permanently disqualifying it from participating in SNAP. *See Mr. Smoky's BBQ, LLC v. United States,* No. 13-2585-PHX-DGC, 2014 WL 24152, at *2 (D. Ariz. Jan. 2, 2014). This case is easily distinguishable because the district court did not consider the plaintiff's due process argument as a facial challenge, but instead "as applied" to the specific facts of the case. To clarify, although "facial" and "as applied" challenges may overlap conceptually, if the claim and relief sought reach beyond the plaintiff's particular circumstances, it is a "facial challenge." *See John Doe No. 1 v. Reed*, 561 U.S. 186, 194, 130 S.Ct. 2811, 177 L.Ed.2 493 (2010); *Center for Individual Freedom v. Madigan*, 697 F.3d 464, 475 (7th Cir. 2012). Indeed, the district court in *Mr. Smoky's BBQ* repeatedly discussed the unique facts of the case and distinguished the *Mansour* and *Ameira* decisions stating that the "Court would find the reasoning of these cases persuasive in a facial challenge to Defendants' procedures, but cannot reach the same conclusion in this as-applied case." *Mr. Smoky's BBQ,* 2014 WL 24152, at *2. Because Tony's Pantry is facially challenging the statutory scheme, its reliance on *Mr. Smoky's BBQ* is misplaced. *See Washington State Grange v. Wash. State Republican Party,* 552 U.S. 442, 449, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008) ("[A] plaintiff can only succeed in a facial challenge by establish[ing] that no set of circumstances exists under which the Act would be valid, *i.e.,* that the law is unconstitutional in all of its applications.") (citation omitted). As such, Tony Pantry's

procedural due process argument fails, and thus does not support the store's argument that it has a likelihood of success on the merits as required by § 2023(a)(17).

### B. Tony's Pantry Has Not Refuted the FNS's Decision With Sufficient Evidence

In its reply memorandum, Tony's Pantry briefly states that it is challenging the FNS's final decision because the underlying transactions did not constitute trafficking of SNAP benefits. In particular, the store argues that "at every stage of the process, [it has] refuted the charges against it, and [has] done so by submitting purchase orders, receipts, bank records, tax filings, and other relevant information." The store, however, did not develop this argument in its reply brief.

Nonetheless, turning to the administrative record, when seeking administrative review of the October 2, 2014 final determination, Tony's Pantry provided documents to justify the irregular transactions identified in the charge letter, including Illinois Sales and Use Tax Returns, monthly SNAP redemption transaction and dollar records, daily summaries of retail sales, and inventory invoices for three vendors. (A.R. 319-20.) The Final Agency Decision notes that although these records "generally reconcile to the State of Illinois Sales and Use Tax materials making it reasonable to consider that SNAP revenue is being correctly reported to the State of Illinois," the "[i]nventory materials provided do not support a reasonable determination that inventory purchases support the volume of sales for either SNAP or cash sales." (A.R. 320.)

Tony's Pantry has not attempted to refute the agency's decision regarding the inadequate inventory materials either in its legal memoranda in support of its motion to stay or at the March 2016 evidentiary hearing. Rather, at the March 2016 evidentiary hearing, the store presented the testimony of Mr. Yahya, the owner of Tony's Pantry, and Mr. Asfor and Mr. Khasib, employees

of Tony's Pantry, to refute the agency's findings regarding: (1) the unusual number of transactions ending in the same cents value; (2) the multiple transactions from individual household accounts that occurred in short time-frames; and (3) the excessively large SNAP transactions.[2] Tony's Pantry, however, failed to submit any documentation at the hearing regarding the store's sales. The Court notes that Tony's Pantry filed this lawsuit approximately a year ago and has been on notice of the need to submit documentation to support its claims. Despite this time and notice, Tony's Pantry has failed to maintain and submit any financial or business documents in addition to the documents it provided during the administrative process.

Although the hearing testimony provides possible explanations regarding the suspicious activity, because the store has not provided any documentary evidence outside of the administrative record and does not refute the Final Agency Decision regarding the inadequacy of the documentary evidence provided in October 2014, Tony's Pantry has failed to satisfy its burden of showing – by a preponderance of the evidence – that the agency's decision was invalid. *See Fells,* 627 F.3d at 1253; *Dinner Bell Mkts.,* 116 F. Supp. 3d at 913. Even though Tony's Pantry may ultimately be able to provide additional evidence to make this showing, it has failed to establish a likelihood of success on the merits at this juncture.

## III.  Irreparable Injury

Last, the Court must consider whether Tony's Pantry has presented sufficient evidence to establish that it would be irreparably harmed if the Court does not issue a stay. Under § 2023(a)(17), "irreparable harm is more than monetary loss; there must be more than a

---

[2]  Tony's Pantry made similar arguments in counsel's October 23, 2014 letter to the FNS that was sent prior to the Final Agency Decision. (Ex. I, 10/23/14 Letter, A.R. 146-47.)

speculative chance of other irreparable injury." *Dinner Bell Mkts.*, 116 F. Supp. 3d at 914 (citing *Khalik v. USDA*, No. 94 C 5809, 1994 WL 548213, at *2 (N.D. Ill. Oct. 5, 1994) ("if a showing of mere economic loss was sufficient to establish irreparable injury, issuance of a stay would be automatic")); *Alkabsh,* 733 F. Supp. 2d at 938 ("While as a general rule, a movant has not established irreparable harm where damages would adequately compensate the movant for the asserted harm, the loss of an ongoing business can constitute irreparable harm."); *Morgan v. Ragan,* 46 F. Supp. 3d 52, 63 (D.D.C. 2014) ("[l]osing a substantial percentage of a store's business, especially when coupled with the closing of the store, is enough to constitute irreparable harm.") (citation omitted). A speculative injury, however, is insufficient to fulfill § 2023(a)(17)'s requirement of irreparable harm. *See id.*; *Alkabsh,* 733 F. Supp. 2d at 938; *see also* 11A Charles A. Wright *et al.,* Federal Practice & Procedure § 2948.1 (2d ed. 1995) ("Speculative injury is not sufficient; there must be more than an unfounded fear").

Here, Defendant argues that Tony's Pantry has failed to provide evidence that the permanent disqualification from the SNAP program caused it to lose at least 30% of its business. *Phany Poeng v. United States,* 167 F. Supp. 2d 1136, 1142 (S.D. Cal. 2001) (although "monetary injuries are generally not considered irreparable," the "majority of district courts addressing this issue have concluded that a loss of at least thirty percent of a plaintiff's business can constitute irreparable harm.") (collecting cases). On the other hand, Tony's Pantry argues that SNAP receipts accounted for 55% of the store's proceeds before the permanent disqualification based on the Final Agency Decision's calculations. Tony's Pantry, however, has not provided any documentary evidence concerning its loss after the permanent disqualification took effect in October 2014, as required to establish irreparable harm. *See, e.g., Dinner Bell Mkts.*, 116 F.

Supp. 3d at 914; *Morgan,* 46 F. Supp. 3d at 64. Instead, at the March 2016 evidentiary hearing, the store's owner Mr. Yahya testified that the store has lost approximately $20,000 to $23,000 a month in SNAP sales. When asked whether he had documentary evidence to support this estimate, Mr. Yahya stated that he did not keep all of the receipts of the store's inventory purchases. In addition, Mr. Yahya did not submit any financial records or other business records to support his assertions. This failure is particularly telling because Tony's Pantry has had notice of the need to present financial and business records since filing this lawsuit, if not earlier.

Mr. Asfor and Mr. Khasib also testified that the store had suffered business losses since permanent disqualification, but further explained that they did not have any business records because Mr. Yahya was responsible for the store receipts. When the Court asked the store's counsel about business records reflecting post-disqualification sales, counsel admitted that the store did not produce any post-disqualification documentary evidence in support of its loss of sales.[3] In sum, without objective documentary evidence, the testimonial evidence is too speculative to establish irreparable harm. *See Morgan,* 46 F.Supp.3d at 64; *Phany Poeng,* 167 F.Supp.2d at 1143.

Defendant further argues that Tony's Pantry cannot establish irreparable harm because the store has remained in business for approximately 16 months since the permanent disqualification took effect, which belies the store's argument that if will go out of business if it is not reinstated to the SNAP program. At the March 2016 hearing, however, Plaintiff's

---

[3] In addition, counsel did not adequately explain why Tony's Pantry filed the present motion to stay approximately seven months after filing its lawsuit seeking review of the Final Agency Decision.

witnesses testified that the reason the store has remained open after the permanent

disqualification is that the store's employees are not regularly paid for working there. As Mr.

Yahya explained, the store employees include his friend, sons, and other family members who

live with him and that he gives them money when needed. Again, this testimonial evidence –

without more – is too speculative to support the conclusion that Tony's Pantry will suffer

irreparable harm if the Court does not grant the present motion to stay. *See Dinner Bell Mkts.,*

116 F.Supp.3d at 914.

Next, at the evidentiary hearing, Tony's Pantry presented evidence about the

neighborhood that the store serves and the potential harm to the SNAP recipients who shop at

Tony's Pantry if the Court does not grant the motion to stay. In response, Defendant asserts that

Tony's Pantry cannot rely on the irreparable harm to the SNAP recipients because the relevant

inquiry focuses on the store's irreparable harm. *See Phany Poeng,* 167 F. Supp. 2d at 1142

("traditional irreparable injury standard examines the possibility of injury to *Plaintiff* and not

third parties.") (emphasis in original). Even if the Court did consider the injury to the SNAP

recipients, the Final Agency Decision states that there are numerous SNAP retailers within one

mile of Tony's Pantry. *See id.* ("food stamp recipients will not suffer irreparable injury as their

nutritional needs will be satisfied at comparable and nearby authorized food stores"). To clarify,

the Final Agency Decision stated:

> Contrary to Appellant's contention that there is only one (1) SNAP authorized
> firm located within a five (5) mile radius of Appellant firm the Retailer
> Operations provides that there are 41 SNAP authorized stores within a one (1)
> mile radius of Appellate firm including 14 convenience stores; 10 small grocery
> stores; four (4) combination/other type stores; 10 medium grocery stores; two (2)
> large grocery stores and one (1) superstore within a one (1) mile radius of Tony's
> Pantry Mart Inc. #1. On review of the USDA Retailer Locator website
> http://www.fns.usda.gov/snap/retailerlocator[,] 38 SNAP authorized retailers are

identified within one (1) mile of Appellate firm with approximately one-half of those located on the same side of the Eisenhower Expressway.

(Final Agency Decision, A.R. 319.)  Because Tony's Pantry did not refute this evidence with anything but unsubstantiated testimonial evidence, any argument that the SNAP recipients would suffer irreparable harm fails.  Furthermore, Tony's Pantry did not present the testimony of any of its customers to support this argument.

Accordingly, Tony's Pantry has not presented sufficient evidence that it has suffered irreparable harm and will suffer irreparable further harm due to the SNAP permanent disqualification.  Because Tony's Pantry has not established a likelihood of success on the merits or that it would suffer irreparable harm, the Court denies the store's § 2023(a)(17) motion to stay.

## CONCLUSION

For the reasons set forth above, the Court denies Plaintiff's motion to stay the FNS's Final Agency Decision pending the outcome of this matter.

**Date:** March 30, 2016

ENTERED

AMY J. ST. EVE
**United States District Court Judge**

21