IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TONY'S PANTRY MART INC. #1, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 15 C 2967 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| DEPARTMENT OF AGRICULTURE | ) | |
| FOOD and NUTRITION SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On April 3, 2015, Plaintiff Tony's Pantry Mart Inc. #1 ("Tony's Pantry" or "Plaintiff") filed a Complaint and Petition for Review of the Food and Nutrition Service's ("FNS") Final Agency Decision permanently disqualifying Tony's Pantry from participating in the Supplemental Nutrition Assistance Program ("SNAP").[1] *See* 7 U.S.C. §§ 2021(b)(3)(B), 2023(a)(13). On March 30, 2016, the Court denied Plaintiff's motion to stay the FNS's Final Agency Decision pending the outcome of this matter brought pursuant to 7 U.S.C. § 2023(a)(17). The Court presumes familiarity with its March 30, 2016 ruling.

Before the Court is the FNS's motion for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(a) and Northern District of Illinois Local 56.1. For the following reasons, the Court grants the FNS's motion for summary judgment and dismisses this lawsuit in its entirety.

---

[1] The United States Department of Agriculture ("USDA") has delegated the administration of SNAP to the Food and Nutrition Service ("FNS"). *See Dinner Bell Mkts., Inc. v. United States*, 116 F. Supp. 3d 905, 907 (S.D. Ind. 2015); 7 C.F.R. § 271.3(a).

**STATUTORY AND REGULATORY BACKGROUND**

"In 1964, Congress permanently established what was then called the Food Stamp Program" that "aims both to feed low-income individuals and to strengthen the nation's agricultural economy." *Fells v. United States,* 627 F.3d 1250, 1252 (7th Cir. 2010) (internal citation and citations omitted); *see also* 7 U.S.C. § 2011. "In 1996, Congress set a deadline for states to replace the [original paper] coupons with electronic benefit transfer ('EBT') systems, which use debit-type cards to deduct benefits from a central location." *Fells*, 627 F.3d at 1252 (citing 7 U.S.C. § 2016(h)); *see also Brothers Food & Liquor, Inc. v. United States,* 626 F. Supp. 2d 875, 877 (N.D. Ill. 2009) ("Food stamp benefits are delivered to recipients on encoded Electronic Benefits Transaction (EBT) cards which recipients swipe through a reader in order to pay for eligible items, such as bread, dairy products, meat, and vegetables."). "Upon the completion of this change in 2008, Congress renamed the program the Supplemental Nutrition Assistance Program" or SNAP. *Fells*, 627 F.3d at 1252; *see also Mehrab No. 1 Corp. v. United States,* 837 F. Supp. 2d 943, 944 (N.D. Ill. 2011) (SNAP was "formerly known as the Food Stamp Program").

Individuals may only redeem SNAP benefits for food items at retail stores that are approved for program participation. *See* 7 U.S.C. § 2013(a). "Just as individuals must satisfy certain eligibility requirements in order to participate in SNAP, retail food store owners also must comply with applicable provisions and regulations." *Fells*, 627 F.3d at 1252 (citing 7 U.S.C. § 2018). The FNS may disqualify participating stores for improper use of benefits, including "trafficking," which is defined as "the buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits ... for cash or consideration other than eligible food." *Dinner Bell*

*Mkts., Inc. v. United States,* 116 F. Supp. 3d 905, 907 (S.D. Ind. 2015) (quoting 7 C.F.R. § 271.2).

The FNS monitors stores through the Anti–Fraud Locator Using Electronic Benefit Retailer Transactions ("ALERT") computer program to detect trafficking or other fraudulent activity involving SNAP benefits. *See, e.g., Duchimaza v. United States*, ___F.Supp.3d ___, 2016 WL 5799295, at *3 (D. Conn. Sept. 30, 2016); *Tony's Pantry Mart Inc. v. United States Dep't of Agric.*, 175 F. Supp. 3d 987, 991 (N.D. Ill. 2016). "When a store triggers an ALERT report through a pattern of suspicious transactions, the FNS may conduct an investigation, including a store visit, and the USDA may open a case and proceed with an administrative action against the store." *Saudabad Convenience, Inc. v. United States Dep't of Agric.,* No. 13 C 298, 2014 WL 611194, at *1 (D.R.I. Feb. 18, 2014). Also, "[w]hen determining whether a store owner has trafficked in food stamps, the agency may rely on 'facts established through on-site investigations, inconsistent redemption data, or evidence obtained through a transaction report under an electronic benefit transfer system.'" *Fells*, 627 F.3d at 1252-53 (citation omitted).

## FACTUAL BACKGROUND

Tony's Pantry is an Illinois corporation owned by Mohammad Yahya and located at 745 South Kedzie Avenue in Chicago. (R. 49, Def.'s Rule 56.1 Stmt. Facts ¶ 3.) Tony's Pantry is a convenience store that has been an authorized SNAP retailer since April 2012 and is open from 8:00 a.m. through 9:00 p.m. – seven days a week (*Id*. ¶¶ 5, 6.) In 2013, the ALERT program detected unusual SNAP transaction activity at Tony's Pantry, after which a FNS contractor conducted a store visit in November 2013. (*Id*. ¶ 7.) The store visit revealed that Tony's Pantry carried some staple foods and had a small deli, but that the majority of the store's inventory consisted of snack foods. (*Id*. ¶ 8.) Also, the FNS contractor observed that Tony's

Pantry did not carry any fresh fish or poultry and that it had one cash register behind a glass partition. (*Id*.) The FNS contractor's report also noted that the store had a minimal selection of fresh fruits and vegetables and that he observed only one shopping cart and one basket during his visit, both of which were in the storeroom. (*Id*., R. 49-1, Admin. Record (A.R.), at 50.)

Despite the FNS contractor's observations, Mr. Yahya and Abdalrahim Asfor, who works at Tony's Pantry, both testified that the store sells many food items, including fresh meat, deli meat by the pound, ground beef, and whole turkeys. (R. 52, Pl.'s Rule 56.1 Stmt. Facts ¶ 1.) Both men also explained that Tony's Pantry has various specials on single items and bundles of items and that the store has signs advertising its specials. (*Id*. ¶ 2.) They also testified that the store has one shopping cart and seven shopping baskets and that they keep some of the shopping baskets in the store's office. (*Id*. ¶ 3.)

After the November 2013 store visit, the FNS further monitored and analyzed Tony's Pantry's SNAP transactions from October 2013 through March 2014. (Def.'s Stmt. Facts ¶ 10.) Based on its analysis of the store's SNAP transactions, the FNS determined that Tony Pantry's redemptions contained three patterns of transactions indicative of trafficking during this time period. (*Id*. ¶ 11.) First, there were 969 transactions in an amount of $9.00 or more that ended in a same cents value (either .00 cents or .50 cents). (*Id*. ¶ 12.) Second, the FNS observed 33 instances where multiple withdrawals were made from the account of a single SNAP household within a 24-hour period and identified five separate SNAP households that had multiple medium-to-large transactions at Tony's Pantry that were made shortly before or shortly after each household had shopped at a supermarket. (*Id*. ¶¶ 13, 14.) Third, the store had 873 transactions that exceeded $27, which was more than 300% higher than the average purchase amount for a convenience store. (*Id*. ¶ 15.) In addition, the FNS compared Tony's Pantry to

other SNAP authorized stores in the area noting that the high number of comparable stores were within a 2-mile radius of Tony's Pantry. (*Id.* ¶¶ 16, 17.) The FNS also compared Tony's Pantry's SNAP sales to four other convenience stores and noted that Tony's Pantry had the highest dollar volume of SNAP sales of all the comparable stores. (*Id.* ¶ 18.)

Following the ALERT notification, the store visit, the EBT analysis, and the store comparison, the FNS issued a charge letter to Tony's Pantry on September 2, 2014. (*Id.* ¶ 19.) The charge letter identified the three patterns indicative of trafficking – discussed above – and attached the lists of the transactions that FNS relied upon in making its determination. (*Id.* ¶ 20.) The letter further advised Tony's Pantry that the sanction for trafficking was permanent disqualification and gave the store ten days to respond to the charge letter before the FNS issued a determination. (*Id.* ¶ 21.) The September 2014 letter also notified Tony's Pantry that it could request the imposition of a civil money penalty in lieu of the sanction of permanent disqualification, but to do so, Tony's Pantry had to satisfy the four criteria set forth in 7 C.F.R. § 278.6(i). (*Id.*)

On September 11, 2014, the FNS received a written response from the store's attorney asserting that the store had not engaged in any trafficking. (*Id.* ¶¶ 22, 23.) The response did not include supporting documentation that would have indicated that the transactions identified by the FNS were legitimate SNAP purchases, such as invoices, receipts, photographs, advertisements, flyers, or affidavits. (*Id.* ¶ 23.) Rather, the response sought to explain the transactions by stating – without any documentary evidence – that the store offered specials on sandwiches, cereals, and milk at whole dollar amounts, and similarly priced baby formula, eggs, and cheese at whole dollar amounts. (*Id.* ¶ 24.) In regard to the multiple transactions made from the accounts of a single SNAP household within a 24-hour period, the store's response stated that

5

EBT cards remain in the possession of each household and the store had no authority to limit the number of purchases made by a household. (*Id.* ¶ 25.)

The FNS then analyzed the response in a Case Sanction Recommendation dated October 1, 2014, and concluded that the sanction of permanent disqualification was appropriate in light of the EBT transaction data and Tony's Pantry's failure to provide any documentation explaining the transactions identified in the charge letter. (*Id*. ¶ 27.) Shortly thereafter, the FNS issued a final determination letter to Tony's Pantry on October 2, 2014 permanently disqualifying the store from SNAP. (*Id*. ¶ 28.) The October 2014 letter notified the store that the disqualification was effective upon receipt of the letter and that Tony's Pantry had ten days to submit a written request for administrative review of the decision. (*Id*.)

On October 10, 2014, Tony's Pantry requested administrative review of the final determination letter with the USDA's Administrative Review Branch. (*Id*. ¶ 29.) The request for administrative review included a number of documents that Tony's Pantry claimed justified the transactions identified in the charge letter, including undated photographs of handwritten advertisements, Illinois Sales and Use Tax returns, monthly SNAP redemption transaction and dollar records, daily summaries of retail sales, and inventory invoices for three vendors. (*Id*. ¶ 30.)

On March 10, 2015, an administrative review officer issued the Final Agency Decision upholding the FNS's finding of trafficking and penalty of permanent disqualification. (*Id*. ¶ 31.) The Final Agency Decision referenced the lack of inventory, both in quantity and variety, the limited checkout area, and the lack of shopping baskets to support the purchases made at the store. (*Id*. ¶ 32.) The March 2015 decision also stated that many of the large purchases identified in the charge letter could not be explained given the larger purchases made by the

6

same households at grocery stores on the day immediately preceding or following the large purchases at Tony's Pantry. (*Id*. ¶ 33.) Furthermore, the decision noted that Tony's Pantry did not offer sufficient evidence or reasonable explanations for the unusual, irregular, and inexplicable transactions. (*Id*. ¶ 34.) The final decision addressed each category of documents that Tony's Pantry submitted during the administrative review and determined that the inventory materials provided by the store "do not support a reasonable determination that inventory purchases support to volume of sales for either SNAP or case sales." (*Id*. ¶ 35.) Based on a review of the evidence, including the EBT transaction data and information from the store visit, the administrative review officer concluded that the FNS had provided substantial evidence of trafficking and sustained the permanent disqualification decision. (*Id*. ¶ 36.)

Following the Court's March 2016 denial of the store's motion to stay pursuant to § 2023(a)(17), the Court re-opened discovery and the store produced additional evidence in support of its arguments, including bank statements, invoices, receipts, account statements, and letters from vendors, as well as a spreadsheet summarizing the information in the documents. (*Id*. ¶ 37.) According to the store's summary spreadsheet, the additional documents demonstrated that Tony's Pantry had purchased $97,396 in SNAP-eligible food items from October 2013 to March 2014, which was the FNS's review period during the investigation. (*Id*. ¶ 38.) During that same time period, the store's total sales (both SNAP and non-SNAP sales) were $221,495, and its SNAP sales according to an ALERT report were $115,425. (*Id*. ¶ 39.) Tony's Pantry's non-food sales during this time period were minimal and most of the store's non-SNAP sales had been cash sales for food. (*Id*. ¶ 40.) Also, the FNS reviewed these newly produced documents and determined that the store's inventory purchase during this time period consisted of the following: $20,277 (or 20%) of the purchases were for beverages/water, $61,892

(or 61%) of the purchases were for snack foods/candy, and $19,165 (or 19%) of the purchases were for staple foods. (*Id.* ¶ 42.)

## LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "To survive summary judgment, the non-moving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." *Life Plans, Inc. v. Security Life of Denver Ins. Co.,* 800 F.3d 343, 349 (7th Cir. 2015).

The Court's judicial review of the administrative finding of a trafficking violation is de novo giving the plaintiff "an opportunity to show that the factual determination was wrong." *McGlory v. United States,* 763 F.2d 309, 311 (7th Cir. 1985) (per curiam); 7 U.S.C. § 2013(a)(15). "The record in the district court, not the record before the agency, is what counts." *McGlory,* 763 F.2d at 311 ("The district court must determine the validity of the agency's factual

determinations anew"). Ultimately, the plaintiff bears "the burden of proving, by a preponderance of the evidence, that the agency's determination was invalid." *Fells,* 627 F.3d at 1253; *see also Brothers Food & Liquor,* 626 F. Supp. 2d at 879 ("Plaintiff has the burden of proving by a preponderance of the evidence on this fresh record that the administrative decision was invalid because violations did not occur."). If the Court concludes that there was a trafficking violation, it must give deference to the penalty imposed by the FNS and may only overturn the imposed penalty if it is arbitrary and capricious. *See Estremera v. United States*, 442 F.3d 580, 585 (7th Cir. 2006); *Brooks v. United States,* 64 F.3d 251, 256 (7th Cir. 1995); *McGlory,* 763 F.2d at 311.

## ANALYSIS

### I. Trafficking Determination

"When determining whether a store owner has trafficked in food stamps, the agency may rely on 'facts established through on-site investigations, inconsistent redemption data, or evidence obtained through a transaction report under an electronic benefit transfer system." *Fells,* 627 F.3d at 1252-53 (quoting 7 U.S.C. § 2021(a)(2)); *see also* 7 C.F.R. § 278.6(a). When reviewing the EBT data from October 2013 through March 2014, the FNS determined that the store's redemptions contained three patterns of transactions indicative of unlawful trafficking: (1) 969 transactions in an amount of $9.00 or more that ended in a same cents value (either .00 cents or .50 cents); (2) 33 sets of transactions where multiple withdrawals were made from the account of a single SNAP household within a 24-hour period; and (3) 873 transactions that exceeded $27, which was more than 300% higher than the average purchase for a convenience store. Federal courts have repeatedly upheld the FNS's permanent disqualification determinations based on similar EBT transaction reports at summary judgment. *See Young Choi*

*Inc. v. United States*, 639 F. Supp. 2d 1169, 1179 (D. Haw. 2009) ("The law is clear that FNS may base its finding of a violation on analysis of EBT transaction reports or on-site store surveys."); *see, e.g., Sharif v. United States*, No. 4:16-CV-67-JMV, 2017 WL 58837, at *5 (N.D. Miss. Jan. 5, 2017); *Kingway Supermarkets Inc. v. United States*, 545 F. Supp. 2d 613, 618 (S.D. Tex. 2008); *Kahin v. United States*, 101 F. Supp. 2d 1299, 1303 (S.D. Cal. 2000). In response to summary judgment, Plaintiff argues that the FNS based its disqualification decision on a perfunctory and flawed analysis of the EBT data and offers explanations for the three EBT categories that the FNS deemed suspicious. In short, Plaintiff argues that there are genuine issues of material fact whether a trafficking violation occurred. *See J. Mart, Inc. v. U.S. Dep't of Agric.*, No. CA 13-424 S, 2013 WL 5755186, at *3 (D.R.I. Oct. 23, 2013); *Kahin,* 101 F.Supp.2d at 1302. The Court now turns to each of Plaintiff's arguments regarding the three patterns of EBT transactions indicative of unlawful trafficking.

First, the store argues that the 969 transactions in an amount of $9.00 or more that ended in a same cents value (either .00 cents or .50 cents) "are not at all suspicious because Tony's Pantry purposely prices many of its items in this way." (R. 51, Resp. Brief, at 4-5.) Viewing the evidence and all reasonable inferences in Plaintiff's favor, the store points to Mr. Yahya's and Mr. Asfor's deposition testimony in which they explained the store's pricing structure which purposely ends prices in whole or half dollar amounts. (Pl.'s Stmt. Facts ¶ 5; R. 51-3, Yahya Aff. ¶ 10.) In his affidavit, Mr. Yahya clarifies that this "pricing method is easier for customers, and it allows me and other workers at Tony's Pantry to check out customers quickly." (Yahya Aff. ¶ 10.) Further, Mr. Yahya testified at his deposition that the store advertises specials that bundle products together for a price ending in a whole dollar amount, such as three boxes of cereal and one gallon of milk for $13.00. (Pl.'s Stmt. Facts ¶ 2; Yahya Aff. ¶ 9.)

Next, Tony's Pantry takes issue with the EBT data that revealed 33 sets of occurrences where 22 different households used the same SNAP beneficiary account more than once in the same day. Plaintiff argues that "this kind of repetitive SNAP use by a single beneficiary is wholly unremarkable given the typical customer at Tony's Pantry." (Pl.'s Resp. at 8.) More specifically, in his affidavit, Mr. Yahya avers that the store's "customers principally live in the immediate neighborhood, within a two or three block radius of the store, and they walk to the store[.]" (Yahya Aff. ¶ 11.) Examining this evidence in a light most favorable to Plaintiff, due to the customers' proximity to the store, multiple members of the same household – who share the same SNAP card – often shop at the store at staggered times during the day. (Pl.'s Stmt. Facts ¶ 6.)

Last, turning to the EBT transaction report regarding a pattern of excessively large purchases, namely, the 873 transactions that exceeded $27 that is more than 300% higher than the average purchase for a convenience store, Plaintiff argues that the FNS's comparison to other stores was flawed. Specifically, Plaintiff argues that the FNS compared data of the store's large purchases to all other stores in Illinois that the FNS categorizes as convenience stores, and not "the average sale of a similarly situated store with the same kind of socio-economic demographics as the neighborhood that surrounds Tony's Pantry." (Pl.'s Resp. at 10.) Plaintiff does not cite legal authority supporting the premise that the FNS's comparison is flawed because it considered Illinois convenience stores and not local convenience stores. Moreover, in the Final Agency Decision, the FNS also considered Retailer Operations comparisons of four convenience stores located in the immediate vicinity of Tony's Pantry in making its disqualification findings. (R. 49-9, Final Agency Decision, at 7 (A.R. 318); *see also* Def.'s Stmt. Facts ¶ 18.) Indeed, the FNS compared Tony's Pantry to other SNAP authorized stores in the

11

vicinity. (Def.'s Stmt. Facts ¶¶ 16, 17.) In any event, Plaintiff also presents evidence explaining certain large purchase amounts, namely, that it is not unusual for customers at Tony's Pantry to purchase higher-priced food products such as baby formula, milk, pizza, Italian beef sandwiches, meat by the pound, and bulk quantities of soda and water. (Pl.'s Stmt. Facts ¶ 8.)

Viewing this evidence and all reasonable inferences in Plaintiff's favor, Plaintiff's explanations regarding the store's suspicious SNAP activity are insufficiently specific to raise a genuine factual dispute for trial because "[t]o defeat a motion for summary judgment, the nonmoving party needs to raise material issues of fact [as] to every alleged violation charged against it." *Young Choi,* 639 F.Supp.2d at 1178; *see also McClain's Mkt. v. United States*, 214 Fed. Appx. 502, 505 (6th Cir. 2006) ("To survive summary judgment, a plaintiff in a Food Stamp Program disqualification case must raise material issues of fact as to *each* alleged violation.") (emphasis in original); *Jackson v. United States*, No. 08-2770, 2009 WL 941766, at *7 (N.D. Cal. Apr. 3, 2009) ("In order to preclude summary judgment, Plaintiff must raise material issues of fact as to each of the violations charged against her store that are established in the administrative record."). Put differently, "[b]ecause summary judgment may be defeated only when the plaintiff identifies a genuine factual dispute as to each alleged violation, general statements about [customer's] shopping patterns or other [customer] practices are not enough create a triable issue of fact." *Rockland Convenience Store v. United States*, No. 10-CV-260-LM, 2011 WL 5120410, at *8 (D.N.H. Oct. 27, 2011). Such specificity is required because "permanent disqualification is warranted on 'the first occasion' of coupon trafficking, [thus] it is Plaintiff's burden to raise material issues of fact as to each of the transactions set forth as suspicious by the FNS." *Kahin*, 101 F. Supp. 2d at 1303; *see also McClain's Mkt. v. United States*, 411 F. Supp. 2d 772, 777 (N.D. Ohio 2005) (store owner's "affidavit presents no

12

explanation of any of the 149 transactions asserted against plaintiff, but merely presents general justifications for large expenditures. Any one of the 149 transactions is sufficient to establish a violation."). In sum, while Plaintiff's explanations about its pricing and customer spending patterns negate some of the inferences from the EBT data, the explanation and evidence that Plaintiff provides does not account for all of the suspicious activity highlighted by the FNS in its final decision. *See Kahin,* 101 F. Supp. 2d at 1303; *see, e.g., AJS Petroleum, Inc. v. United States*, 2012 WL 683538, at *6 (D. Md. Mar. 1, 2012) ("in attempting to refute the Government's fact-based data, [plaintiff] offers only generalized, hypothetical explanations about its sales and business operations during the investigation period," and thus plaintiff "has fallen far short of the specificity required to defeat summary judgment.").

Moreover, although the deposition testimony and Mr. Yayha's affidavit generally speak to their pricing strategies, bundled sales, customer patterns, and certain expensive grocery items, the store has produced scant documentary evidence supporting the pricing of its merchandise, such as inventory invoices or cash register receipts. *See Duchimaza,* 2016 WL 5799295, at *10 ("[F]actually unsupported arguments do not create a genuine dispute about the legitimacy of the irregular EBT transactions.") (citation omitted); *see, e.g., Rockland Convenience Store,* 2011 WL 5120410, at *10. Tony's Pantry, for example, provided the Agency with inventory invoices for only three of its vendors. (Def.'s Stmt. Facts ¶¶ 30, 35.) In the Final Agency Decision, the FNS concluded that the inventory materials Plaintiff provided did not support Plaintiff's explanations for the suspicious EBT activity. (Final Agency Decision, at 9, 15 (A.R. 320, A.R. 326); Def.'s Stmt. Facts ¶ 35.)

The documents that Tony's Pantry produced after the Court re-opened discovery fare no better. To clarify, Tony's Pantry produced bank statements, invoices, receipts, account

13

statements, and letters from vendors, as well as a spreadsheet summarizing the information in these documents. The FNS reviewed these documents and determined that the store's inventory purchases for the relevant time period reflected that 20 percent of the purchases were for beverages or water, 61 percent of the purchases were for snack food or candy, and 19 percent of the purchases were for staple food. Examining this evidence and all reasonable inferences in Plaintiff's favor, that only 19 percent of the store's inventory consisted of staple food cannot be reconciled with the 873 excessively large purchase transactions that the store explains consisted of baby formula, milk, pizza, Italian beef sandwiches, meat by the pound – all staple foods – and bulk quantities of soda and water, which is only 20 percent of the store's inventory. *See Boss v. Castro,* 816 F.3d 910, 916 (7th Cir. 2016) (at summary judgment, courts "construe all inferences in the non-movant's favor, but he is not entitled to the benefit of inferences that are supported only by speculation or conjecture."). Indeed, the store offers only vague explanations on how these additional documents refute the fact-based EBT data supporting the three patterns of suspicious activity. *See Life Plans, Inc.,* 800 F.3d at 349 ("To survive summary judgment, the non-moving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial."); *Thornton v. M7 Aerospace LP,* 796 F.3d 757, 769 (7th Cir. 2015) ("District courts are not obliged to scour the record looking for factual disputes."); *see also Duchimaza,* 2016 WL 5799295, at *7 ("to defeat summary judgment, Plaintiffs must submit evidence from which a reasonable juror could conclude that the agency's determination is 'invalid' with respect to each cited instance of trafficking."); *Dollar Plus Food Mart LLC v. United States*, No. CV-13-01934, 2015 WL 11090898, at *5 (D. Ariz. May 8, 2015) ("if the store owner fails to meet this burden and to demonstrate a material dispute of fact as to the existence of a SNAP program violation, summary judgment may granted in

favor of the government"). That Mr. Yahya did not keep all purchase receipts for Tony's Pantry and that the store's employees did not always maintain records of deliveries or payments does not create a genuine dispute of fact for trial. *See, e.g., 109 Merrick Deli Corp. v. United States*, No. 11-CV-977, 2014 WL 6891944, at *4 (E.D.N.Y. Sept. 30, 2014) (the store's "conclusory assertions and speculative alternative explanations for the evidence in the record does not create a genuine issue as to any material fact."). In summary, Plaintiff's generalized explanations fail to account for the anomalies revealed in the FNS's analysis of the relevant EBT transaction records. *See Hanna v. United States*, No. 04-74627, 2007 WL 1016988, at *7 (E.D. Mich. Mar. 30, 2007).

Because Plaintiff has failed to present specific evidence raising a genuine dispute for trial in relation to the three patterns of suspicious activity, the Court grants the FNS's Rule 56(a) motion for summary judgment. The Court now turns to whether the FNS's penalty of permanent disqualification was proper under the circumstances.

## II. Permanent Disqualification

Although Plaintiff does not discuss whether the FNS's permanent disqualification sanction was proper – thus waiving this argument, *see Estremera*, 442 F.3d at 587, the Court addresses this issue for the sake of completeness. The Court may only overturn the FNS's penalty of permanent disqualification if it is arbitrary and capricious. *See Estremera*, 442 F.3d at 585; *Brooks,* 64 F.3d at 256. "[A]n agency's action is arbitrary and capricious only if it is 'unwarranted in law or without justification in fact.'" *J.C.C. Food & Liquors v. United States*, No. 96 C 6461, 1997 WL 55960, at *5 (N.D. Ill. Feb. 7, 1997) (citation omitted); *see also S & M Food & Liquor, Inc. v. United States*, No. 89 C 8549, 1990 WL 36278, at *2 (N.D. Ill. Feb. 27, 1990) (same) (Williams, J.). Permanent disqualification from the SNAP program is mandated

15

when an authorized retail store has engaged in trafficking. *See* 7 U.S.C. § 2021(b)(3)(B) (stating disqualification "shall be ... permanent upon ... the first occasion of ... trafficking"); *see also* 7 C.F.R. 278.6(e)(1)(i). Because the FNS properly adhered to its regulatory criteria, the sanction of permanent disqualification is not arbitrary and capricious. *See Duchimaza*, 2016 WL 5799295, at *13 ("A sanction is not arbitrary and capricious if the agency properly adheres to its own regulations and guidelines in imposing a sanction.") (citation omitted); *Young Jin Choi v. United States,* 944 F.Supp. 323, 325 (S.D.N.Y. 1996) ("A sanction is not arbitrary and capricious when a federal agency properly adheres to its own regulations and guidelines when imposing it."). Therefore, the Court grants this aspect of Defendant's summary judgment motion.

## CONCLUSION

For the reasons set forth above, the Court grants Defendant's summary judgment motion and dismisses this lawsuit in its entirety.

**Date:** February 8, 2017

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**